**Lavonne BAXTER, Plaintiff–Appellant,**

**v.**

**Louis SULLIVAN, M.D., Secretary of Health and Human Services,* Defendant–Appellee.**

**No. 89–55782.**

United States Court of Appeals, Ninth Circuit.

Argued and Submitted Oct. 4, 1990.

Decided Jan. 23, 1991.

---

* Louis Sullivan is substituted for his predecessor in office, Otis R. Bowen, M.D., pursuant to Fed. R.App.P. 43(c)(1).

James A. Skidmore, II, Joshue Tree, Cal., for plaintiff-appellant.

Dennis J. Mulshine, Asst. Regional Counsel, Dept. of Health and Human Services, San Francisco, Cal., for defendant-appellee.

Before PREGERSON, REINHARDT and HALL, Circuit Judges.

PREGERSON, Circuit Judge:

The Secretary of Health and Human Services denied Lavonne Baxter's application for disability insurance benefits. The district court affirmed the decision of the Secretary, and Baxter filed this timely appeal. We have jurisdiction under 28 U.S.C. § 1291 (1982). We reverse.

## BACKGROUND

Except for an unsuccessful three-month attempt to resume working in 1985–86, Lavonne Baxter has been unemployed since January 1982. In June 1986, she filed for benefits under Title II and Title XVI of the Social Security Act. She initially asserted that she had been unable to work since February, 1986, due to bronchitis, emphysema and asthma. She successfully established that she was disabled as of June 1, 1986. Although she therefore met the medical qualifications for receiving Supplemental Security Income payments under the provisions of Title XVI, her husband's income rendered her ineligible for the benefits of that need-based program.

Eligibility for disability insurance benefits under Title II, however, does not depend on income. But Baxter's initial application for Title II benefits foundered when it became clear that she was insured only until June 30, 1982. Baxter then amended her claim and asserted that she became disabled after a car accident in January 1982.

After a hearing in which Baxter was not represented by counsel, an Administrative Law Judge (ALJ) determined that in 1982, Baxter was severely impaired but nevertheless retained the ability to perform her past work as a floral designer. The ALJ therefore concluded that Baxter did not become

disabled during the time she was still insured.

After the Appeals Council denied review, the ALJ's ruling became the final decision of the Secretary. Baxter filed a challenge in district court, where the case was referred to a magistrate. After cross-motions for summary judgment, the magistrate recommended that the district court grant summary judgment for the Secretary. Baxter filed no objections to the magistrate's report and recommendation, and the district court adopted it and granted summary judgment for the Secretary.

To prevail at the administrative hearing, Baxter had to prove that she had been disabled more than four years earlier. Baxter explained that her breathing problems had already forced her to miss five weeks of work just before the automobile accident in January 1982. In addition, Baxter contended that whiplash from the automobile accident aggravated a preexisting problem with degenerative disc disease. She argued that the injury and its accompanying pain, combined with her breathing problems, prevented her from returning to work.

No doctors testified personally at the hearing, but Baxter produced medical records and the deposition testimony of Dr. Willard Christiansen, who treated Baxter between 1982 and 1984. Dr. Christiansen's deposition had been taken in preparation for the trial of a suit arising from the 1982 auto accident. Baxter also produced some documentary evidence of other medical treatment she received both before the accident and afterwards. These records showed that in 1979, she had discogenic disease of the lumbrosacral spine and spondylosis, an abnormal growing together of two or more vertebrae. Physical therapy, exercises, and tranquilizers failed to help.

After the car accident, Baxter spent a week in the hospital in traction. X-rays showed that the space between the C–5 and C–6 vertebrae was half its normal width. She used a transcutaneous nerve stimulator for about four months. She discontinued her outpatient therapy for pain after she could no longer afford to pay for it.

Baxter appears to have relied primarily on the deposition of Dr. Christiansen, who first saw her in October 1982. At that time, Baxter complained of pain in the neck, pain in the left shoulder when moving, and a chronic ache. She also complained that she had difficulty gripping, dropped objects, and that her left arm tired easily. Dr. Christiansen noted that Baxter suffered pain when she extended her left arm, when she looked upwards, and when she hyperextended her neck. He noted that her ability to raise her neck was restricted by about 30–35 percent, and her ability to rotate her neck to the side was restricted by about 25 percent. Dr. Christiansen reported that when he first saw Baxter, she was unable to resume her past work as a floral arranger because of her inability to work at or above shoulder level, her pain when hyperextending her neck, and her easily-fatigued left arm. After taking x-rays, Dr. Christiansen noted that Baxter had degenerative cervical disk disease, with significant narrowing of the space between the C–5 and C–6 disks and additional narrowing between the C–6 and C–7 disks. He concluded that Baxter suffered from acute cervical strain superimposed on cervical degenerative disc disease, with a persistent radiculopathy of the left arm. He attributed the persistent radiculopathy to a severe flexion-extension injury of the neck.

On subsequent visits, the doctor noted that Baxter continued to suffer radicular pain. In January, 1983, he noted that Baxter suffered from persistent pain paresthesia and headaches and gained no relief from therapy. In February 1983, an E.M.G. revealed weakness in Baxter's muscles, and Dr. Christiansen also noted a prolonged distal motor latency in the median nerve. Although the doctor concluded in May 1983 that no treatment would help, Baxter returned in December 1983 and complained of chronic pain. Dr. Christiansen believed that the auto accident was the cause of that pain.

In his deposition, Dr. Christiansen stated that as of May 1984, the last time he saw Baxter, she still could not return to her

past work as a floral designer. He said that her work required her to keep her arms up while she arranged flowers, and Baxter was no longer able to hold her arms up for any length of time.

Baxter submitted additional radiological evidence that showed significant narrowing of the space between the C–5 and C–6 vertebrae. She also submitted the treatment notes of Dr. David Ardel, which reveal that Baxter regularly sought treatment and medication for pain between early 1981 and June 1982.

Baxter visited Dr. Sheffel in December 1982. Sheffel's notes from this visit state that Baxter suffered from headaches only "periodically," had no numbness or tingling in her arms or shoulders, and enjoyed the full range of motion in both her neck and shoulders. While the shoulders were still tender, sensation and reflexes were normal and there was no atrophy of the shoulder girdle. X-rays taken by Sheffel revealed early degenerative disc disease but disclosed good mobility on the lateral flexion and extension views.

Baxter was the only witness at the administrative hearing. She submitted her medical records and briefly answered questions posed by the ALJ but was never asked to describe how her injuries and her pain interfered with her ability to work in 1982. It appears that both Baxter and the ALJ intended that the documentary records would provide the basis for decision.

## STANDARD OF REVIEW

■ We review de novo the district court's grant of summary judgment in favor of the Secretary. *Hammock v. Bowen*, 879 F.2d 498, 501 (9th Cir.1989). To survive our review, the findings of the Secretary must be supported by substantial evidence and the denial of benefits must be otherwise free of legal error. *Bates v. Sullivan*, 894 F.2d 1059, 1061 (9th Cir. 1990). Substantial evidence means "more than a mere scintilla," *Richardson v. Perales*, 402 U.S. 389, 401, 91 S.Ct. 1420, 1427, 28 L.Ed.2d 842 (1971), but "less than a preponderance." *Bates*, 894 F.2d at 1061. "It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Perales*, 402 U.S. at 401, 91 S.Ct. at 1427. We cannot affirm the Secretary by simply isolating a certain amount of supporting evidence. We must consider the administrative record as a whole, weighing evidence that undermines as well as evidence that supports the Secretary's decision. *See Gonzalez v. Sullivan*, 914 F.2d 1197, 1200 (9th Cir.1990).

## DISCUSSION

■ The Secretary first argues that Baxter waived her right to appeal because she filed no objections to the magistrate's report and recommendation. We disagree.

In the Federal Magistrates Act, Congress provided that district court judges "shall make a de novo determination of those portions of the [magistrate's] report or specified proposed findings or recommendations to which objection is made." 28 U.S.C.A. § 636(b)(1) (West Supp.1990). The rule in some circuits is that a party who fails to object to the magistrate's findings waives the right to contest them on appeal. *Thomas v. Arn*, 474 U.S. 140, 145–46 & n. 4 106 S.Ct. 466, 469–70 & n. 4, 88 L.Ed.2d 435 (1985) (First, Second, Fourth, Fifth and Sixth Circuits). In *Arn*, the Supreme Court held that courts may validly impose such a rule as a legitimate exercise of their supervisory power. 474 U.S. at 147, 106 S.Ct. at 471. The Ninth Circuit, however, has noted that the language of the Magistrates Act does not require a rule of waiver. *Britt v. Simi Valley Unified School Dist.*, 708 F.2d 452, 454 (9th Cir. 1983). In *Britt* and subsequent cases, we have held that parties who do not object to a magistrate's report waive their right to challenge the magistrate's factual findings but retain their right to appeal the magistrate's conclusions of law. *See id.* at 454–55; *Gonzalez v. Sullivan*, 914 F.2d 1197, 1200 (9th Cir.1990); *Greenhow v. Secretary of Health & Human Servs*, 863 F.2d 633, 635–36 (9th Cir.1988).

The question whether the ALJ's findings are supported by substantial evidence is a

question of law. *Gonzalez,* 914 F.2d at 1200. Baxter thus retains the right to appeal the finding, made by the magistrate and adopted by the district court, that substantial evidence supported the Secretary's finding that Baxter was not disabled.

As Baxter has preserved her right to appeal, we next consider whether there is substantial evidence in the record to support the findings of the ALJ. We conclude that there is not.

Although Baxter successfully established that she was disabled by emphysema, bronchitis and asthma in 1986, the issue here is whether she was disabled before June 30, 1982, the last date that she was insured under Title II. To meet the Social Security Act's definition of disability, she must show that she was unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or has lasted or can be expected to last for a continuous period of at least twelve months." 42 U.S.C.A. § 416(i)(1)(A) (West Supp.1990).

Administrative regulations provide that claims of disability must be evaluated according to a five-step procedure. *See* 20 C.F.R. § 1520 (1990). At the first step, a claimant loses if he or she is engaged in "substantial gainful activity." The second step determines whether the claimant suffers from a severe impairment. If the impairment is not severe, the claimant is not disabled. If the impairment is severe, the evaluation proceeds to step three. In step three, the severe impairment is compared to the impairments listed in an appendix to the regulations. *See* 20 C.F.R. pt. 404, subpt. P. App. 1 (1990). A claimant suffering from one of these listed impairments is presumed disabled, and no further inquiry is necessary. If the impairment is not among these listed impairments, step four determines whether the impairment prevents the claimant from performing his or her previous job. Claimants who can

still perform their past work even with a severe impairment are not disabled. When claimants with severe unlisted impairments cannot perform their past work, step five determines whether they are nevertheless able to perform other work in the national economy. This final step also takes into account the claimant's age, education and work experience. *See generally Bowen v. Yuckert,* 482 U.S. 137, 140–42, 107 S.Ct. 2287, 2290–92, 96 L.Ed.2d 119 (1987).

It appears that the ALJ resolved Baxter's claim at step four. The ALJ first determined that Baxter was not working and had not engaged in "substantial gainful activity" since January 31, 1982. The ALJ then merged steps two and three and concluded that Baxter's impairment was severe but was not among the impairments listed in the appendix to the Secretary's regulations:

> The medical evidence reveals that on or before June 30, 1982, the claimant was severely impaired as the result of a cervical strain, but she did not have an impairment or combination of impairments, listed in or medically to [sic] an impairment listed in Appendix 1, Subpart P, of the Secretary's Regulations No. 4.

Finding No. 5. Proceeding to step four, the ALJ then found that Baxter "retained the residual physical and mental abilities to return to her past relevant work as a floral designer through June 30, 1982." Finding No. 7.

In reaching his conclusion, the ALJ made a separate finding that "[t]he claimant did not experience pain of such intensity and severity as to prevent her from engaging in all substantial gainful work activity." Finding No. 6.[1] The opinion of the ALJ does not reveal whether he considered Baxter's breathing problems, as they existed in 1982, in determining that Baxter retained the ability to perform her previous work.

---

1. In response to Baxter's argument that the ALJ improperly failed to credit her reports of pain, the magistrate wrote that Baxter's reports failed to establish that she suffered severe pain over the entire 12-month period that is required to

establish disability. However, the ALJ never pointed to the duration requirement as a reason for concluding that Baxter's impairment failed to meet the legal definition of disability.

 Baxter advances several challenges to the ALJ's findings. We need discuss only two. First, she contends that the ALJ improperly refused to credit her testimony about her own pain. Second, she argues that the ALJ improperly refused to credit Dr. Christiansen's opinion that Baxter was unable to perform her past work. As Baxter's own testimony was brief, the bulk of the evidence of her pain comes secondhand, from her doctors' reports of her complaints. The ALJ acknowledged that Baxter "does experience some discomfort of the neck" from the automobile accident but concluded that the pain is not and was not severe enough to prevent Baxter from working. The ALJ offered no specific findings or reasoning to support this conclusion, even though the record is replete with Baxter's contemporary reports that the pain associated with her neck injury prevented her from returning to work. An ALJ may not reject a claimant's allegations of pain without making specific findings. *Miller v. Heckler*, 770 F.2d 845, 848 (9th Cir.1985). Because of the ALJ's conclusory evaluation of Baxter's pain, the record does not demonstrate that the Secretary's findings are supported by substantial evidence.

Baxter also contends that ALJ failed to credit the opinion of her treating physician, Dr. Willard Christiansen. The ALJ concluded that Baxter could perform her past work and was therefore not disabled. The ALJ's conclusion directly contradicts the opinion of Dr. Christiansen, who stated in his deposition that Baxter was unable to perform her past work as a floral designer. While the opinion of a treating physician is not binding, it is entitled to special weight. "Where an ALJ chooses to disregard the opinion of a treating physician, he must set forth clear and convincing reasons for doing so if the treating physician's opinion is not contradicted by another doctor." *Davis v. Heckler*, 868 F.2d 323, 326 (9th Cir.1989). *See also Magallanes v. Bowen*, 881 F.2d 747, 751 (9th Cir.1989). Even when another doctor's opinion contradicts the opinion of a treating physician, an ALJ can disregard the latter only by articulating "specific, legitimate reasons for doing

so that are based on substantial evidence in the record." *Magallanes*, 881 F.2d at 751 (quoting earlier cases).

In this case, the ALJ did not merely fail to articulate reasons for disagreeing with the opinion of Dr. Christiansen; he entirely ignored Dr. Christiansen's reports and testimony about his two years of treating Baxter. There is no mention of Dr. Christiansen anywhere in the ALJ's five-page opinion—not even in the ALJ's summary of the medical evidence. As the ALJ's opinion fails to even mention the most significant evidence on which Baxter relies, it cannot be said to be supported by substantial evidence in the record as a whole.

A remand is therefore necessary so that the ALJ can return to the fourth stage of the disability inquiry, consider all the evidence, and determine whether Baxter was able to perform her past work in 1982. On remand, the Secretary must consider Baxter's impairments in combination. *See* 42 U.S.C.A. § 423(d)(2)(C) (West Supp.1990); *Hammock v. Bowen*, 879 F.2d at 503–04. The Secretary has already determined that Baxter's lung condition was disabling as of 1986. Here, Baxter testified at the administrative hearing that breathing problems had already caused her to miss five weeks of work before her auto accident. She testified further that her breathing problems, which gradually got worse over time, were part of the overall disabling condition that kept her from working after the accident. Yet the findings of the ALJ do not appear to evaluate the impact of Baxter's breathing problems on her ability to work in 1982. In evaluating whether Baxter was disabled, the Secretary must consider the effect of Baxter's lung condition as well as her neck injury and the associated pain.

Reversed and remanded for further proceedings consistent with the views herein expressed. This panel will retain jurisdiction over subsequent appeals in this case.