Juan Daniel ZARCO, CDC
# K–41619, Plaintiff,

v.

J. BURT, et al., Defendants.

No. 03 CV 1911–BTM(BLM).

United States District Court,
S.D. California.

Dec. 29, 2004.

Juan Daniel Zarco, In Pro Per, for Plaintiff.

G. Michael German, Deputy Attorney General, Office of the California Attorney General, San Diego, CA, for Defendants.

ORDER ADOPTING REPORT AND RECOMMENDATION AND GRANTING MOTION TO DISMISS

MOSKOWITZ, District Judge.

Plaintiff Juan Daniel Zarco filed a civil rights action against seven officers and a doctor at Calipatria State Prison. The Defendants have moved to dismiss the complaint for Plaintiff's failure to exhaust administrative remedies. Magistrate Judge Barbara L. Majors issued a Report and Recommendation that the motion be granted. Zarco did not file any objections.

The Court agrees with the analysis and conclusion of the Report and Recommendation and adopts it as the opinion of the Court. The Court agrees that Plaintiff, who had documented 602 appeals filed with the prison, did not pursue administrative appeals of his claims in this case. Even if he did submit Exhibits B and K, he did not pursue all levels of administrative review. For the same reasons set forth by Magistrate Judge Majors, the Court concludes that Plaintiff did not exhaust available administrative remedies. Therefore, his complaint must be dismissed.

The Court hereby **ADOPTS** the Report and Recommendation filed on October 10, 2004, and **GRANTS** the motion to dismiss. The Clerk shall enter final judgment for the Defendants dismissing the complaint without prejudice.

**IT IS SO ORDERED.**

REPORT AND RECOMMENDATION GRANTING DEFENDANTS' MOTION TO DISMISS

MAJOR, United States Magistrate Judge.

## I. *PROCEDURAL HISTORY*

On September 22, 2003, Plaintiff, an inmate currently incarcerated at California State Prison in Corcoran, California and proceeding pro se, filed a civil rights complaint pursuant to 42 U.S.C. § 1983. On January 27, 2004, this Court granted Plaintiff's Motion to Proceed In Forma Pauperis. The Court, after screening Plaintiff's Complaint, directed the U.S. Marshal to serve Plaintiff's Complaint pursuant to Fed.R.Civ.P. 4(c)(2) and 28 U.S.C. § 1915(d). *See* January 27, 2004 Order. Defendants J. Burt, D. Dove, K.B. Wood, J. Manning, Price, A Amat, Sosa and L. Santiago ("Defendants") filed a Motion to Dismiss Plaintiff's Complaint pursuant to Fed.R.Civ.P. 12(b) and 42 U.S.C. § 1997e(a). *See* Doc. No. 10.

Defendants claim that Plaintiff has failed to exhaust his available administrative remedies pursuant to 42 U.S.C. § 1997e(a) prior to bringing the action currently before the Court. On May 4, 2004, Plaintiff filed an Opposition to Defendants' motion. *See* Doc. No. 15. On May 14, 2004, Defendants filed a Reply to Plaintiff's Unserved Opposition to their Motion to Dismiss. *See* Doc. No. 17.

## II. *FACTUAL ALLEGATIONS*

Plaintiff claims that on September 8, 2000, Defendant J. Burt hit Plaintiff's ankle with a broomstick. Complaint at 2. According to Plaintiff, Defendant J. Burt then refused to contact medical staff to treat Plaintiff. *Id.* Eventually, Plaintiff's injury was treated by Defendant Dove, but, according to Plaintiff, not treated properly and no injury report was generated. *Id.* Plaintiff also claims that Defendant Manning was aware of Plaintiff's injury but refused to contact the appropriate medical officials. *Id.* at 5. On September 11, 2000, Defendant Wood arrived at Plaintiff's cell and required him to walk on his injured leg. *Id.* Plaintiff collapsed. *Id.* at 4. Defendant Wood then requested a wheelchair for Plaintiff, ignoring the fact that Plaintiff could not sit because of a disabling nervous system condition. *Id.*

Plaintiff was then forced into the wheelchair by Defendant Manning, "in concert with a registered nurse," which resulted in back spasms, numbness and tingling. *Id.* at 5.

Plaintiff claims further that on September 20, 2000, Plaintiff was again injured by "officials actions." *Id.* at 3. Plaintiff claims that these injuries occurred when Defendant Sosa "suddenly approached [his] cell []from [a] blind spot" and "yanked [a] sheet that was held by Plaintiff thus precipitating a collision of Plaintiff's hands" "resulting [in][] lacerations and [a] fracture to digits on right hand and knuckle on left hand." *Id.* at 6. According to Plaintiff, both Defendants Amat and Sosa "walked away laughing and mocking" him. *Id.* Defendant Amat then generated a false report regarding this incident, and, further omitted Defendant Sosa's name. *Id.*

Plaintiff claims further that jail officials ignored his cries for help from injuries emanating from this attack. *Id.* Specifically, Defendant Price ignored his repeated pleas for medical intervention. *Id.* at 5. Plaintiff was eventually treated for a laceration on his right hand and a fracture on his left knuckle by Defendant Dove. *Id.* at 3. Again, according to Plaintiff, Defendant Dove provided insufficient treatment by instructing Plaintiff to "just rinse [his] bleeding hand with water" and, only after "Plaintiffs insistence that [the] condition should be treated," did Defendant Dove contact a medical official. *Id.* Plaintiff also insisted that a medical official take pictures of his injuries "prior to cleaning of [the] wounds" but Defendant Wood refused. *Id.* Defendant Dove "returned to generate an injury report." *Id.* Defendant Wood also generated a disciplinary report "charging Plaintiff with use of force" during the September 20, 2000 incident. *Id.*

at 4–5. Plaintiff claims that his attempts to "gain access to [the] appeal process were futile" in regards to these injuries. *Id.*

And finally, Plaintiff claims that on September 28, 2000, Defendant L. Santiago, a physician at Calapatria State Prison, ordered Plaintiff be put on a "liquid diet" due to a medical condition.[1] *Id.* at 7. Plaintiff claims that Defendant ordered this diet though aware that Plaintiff could not "manually blend[] food" given that Plaintiff's hand was fractured. *Id.* As a result, Plaintiff alleges that he has reached an "emaciated stage" since he cannot appropriately prepare the food given to him. *Id.*

### III. DEFENDANTS' MOTION TO DISMISS PURSUANT TO FED. R.CIV.P. 12(b)

Defendants move to dismiss Plaintiff's petition on the grounds that he failed to exhaust his available administrative remedies. Defendants assert that Plaintiff is required to exhaust all of the available administrative remedies and allege that Plaintiff failed to appeal any of the alleged adverse actions or conduct that occurred on September 8, 20 or 28, 2000. In support of their position, Defendants provide a declaration from Denise Edwards, Appeals Coordinator at Calapatria State Prison, stating that there is no evidence that Plaintiff filed an appeal challenging any of the conduct and a summary of the appeals that were filed by Plaintiff in 2000, which confirmed that there were no records relating to the September 2000 incidents. Plaintiff responds alternatively that he was not required to appeal all of the conduct because it would be futile to do so and that he did, in fact, appeal the alleged incidents. In support of his position that he did ex-

---

1. It is unclear what condition prompted Defendant Santiago to put Plaintiff on a liquid diet; Plaintiff alleges it was because Defendant Santiago "rendered a Bells Palsy attack" on Plaintiff.

haust his administrative remedies, Plaintiff submitted an appeal form relating to the September 8 and 20 incidents, attached to the Complaint at Exhibit B, an appeal form relating to the September 28th incident, attached as Exhibit K to Plaintiff's Opposition, and copies of other documents of unrelated incident reports and appeals. In response, Defendants argue that the document attached as Exhibit B to the Complaint was never submitted to the prison officials and, moreover, does not exhaust his administrative remedies.

### A. Standard of Review

■ In the Ninth Circuit, the "failure to exhaust nonjudicial remedies is a matter of abatement" not going to the merits of the case and is properly raised pursuant to a motion to dismiss. *Ritza v. Int'l. Longshoremen's & Warehousemen's Union*, 837 F.2d 365, 369 (9th Cir.1988). The Court recently confirmed this position in *Wyatt v. Terhune*, 315 F.3d 1108, 1119 (9th Cir.2003) (the proper manner to challenge an inmate's alleged failure to exhaust administrative remedies is to file "an unenumerated Rule 12(b) motion rather than a motion for summary judgment"). "In deciding a motion to dismiss for failure to exhaust nonjudicial remedies, the Court may look beyond the pleadings and decide disputed issues of fact." *Id.* at 1119–1120.

### B. Exhaustion of Administrative Remedies

Before the Prison Litigation Reform Act ("PLRA") was enacted, prisoners challenging conditions of confinement under 42 U.S.C. § 1983 were not generally required to exhaust administrative remedies prior to filing suit in district court. *See Patsy v. Bd. of Regents*, 457 U.S. 496, 500–01, 102 S.Ct. 2557, 73 L.Ed.2d 172 (1982); *Porter v. Nussle*, 534 U.S. 516, 517–18, 122 S.Ct. 983, 152 L.Ed.2d 12 (2002). In 1996, the PLRA amended 42 U.S.C. § 1997e(a), to

mandate that "no action shall be brought with respect to prison conditions under section 1983 of this title, or any federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a); *Porter*, 534 U.S. at 517, 122 S.Ct. 983; *Wyatt*, 315 F.3d at 1117. The Supreme Court has called "protecting administrative agency authority and promoting judicial efficiency" the "twin purposes" of administrative exhaustion. *McCarthy v. Madigan*, 503 U.S. 140, 145, 112 S.Ct. 1081, 117 L.Ed.2d 291 (1992); *see also Porter*, 534 U.S. at 517, 122 S.Ct. 983 (noting that corrective action taken in response to an inmate's grievance might improve prison administration and satisfy the inmate and thereby obviate the need for litigation, help filter out frivolous claims and provide the court with an administrative record that clarifies the contours of the controversy).

The administrative appeal system for inmates in the California prison system is a three-level review process described in Title 15 of the California Code of Regulations". *See Wyatt*, 315 F.3d at 1116 n. 8; *Barry v. Ratelle*, 985 F.Supp. 1235, 1237 (S.D.Cal.1997); *Irvin v. Zamora*, 161 F.Supp.2d 1125, 1129 (S.D.Cal.2001). "Any inmate or parolee under the [California Department of Corrections'] jurisdiction may appeal any department decision, action, condition or policy perceived by those individuals as adversely affecting their welfare." CAL. CODE REGS. TIT. 15 § 3084.1(a). In order to exhaust administrative remedies, a prisoner must first attempt to informally resolve the problem with the staff member involved in the action or decision being appealed." *Id.;* § 3084.5(a). If unsuccessful, the prisoner must then submit a formal appeal on an inmate appeal form (a "CDC 602") to the institution's Appeals Coordinator or Appeals Office. *Id.;* § 3084.5(b). If the pris-

oner is again unsuccessful, he or she must submit a formal appeal for second level review, *Id.;* § 3084.5(c), which is conducted by the institution head or designee. *Id.;* § 3084.5(e)(1). The third or "Director's Level" of review "shall be final and exhausts all administrative remedies available in the Department [of Corrections.]" *See* Cal. Dep't of Corrections Operations Manual, § 54100.11, "Levels of Review."

In *Booth v. Churner,* 532 U.S. 731, 121 S.Ct. 1819, 149 L.Ed.2d 958 (2001), the Supreme Court resolved a split among the Circuits as to whether a state prison grievance procedure which is incapable of providing money damages is "available" under section 1997e(a) and therefore must be exhausted before the prisoner files federal suit under 42 U.S.C. § 1983 seeking those damages. Looking both to the plain language of the statute and to the legislative history behind the PLRA, the Court held that exhaustion of "available" administrative remedies under § 1997e(a) is required in prison condition cases so long as the "prison administrative process [ ... ] could provide some sort of relief on the complaint stated" regardless of whether that process can provide "the remedial action [the] inmate demands." *Booth,* 532 U.S. at 734, 736, 121 S.Ct. 1819. In other words, the prisoner must exhaust his claims through the existing administrative processes, even if he seeks money damages which are not authorized, so long as those procedures have the "authority to provide any relief" or permit prison officials to take "some action in response to the complaint." *Id.* at 736, 741 n. 4, 6, 121 S.Ct. 1819.

Defendants claim that Plaintiff did not exhaust his administrative remedies as to the conduct and injuries that Plaintiff alleges occurred on September 8, 20 and 28, 2000. To establish this failure, Defendants submitted a summary of the complaints filed by Plaintiff in 2000 and stated that none of them relate to the incidents at issue in the instant case, those occurring in September 2000. *See* Declaration of Denise Edwards and attached exhibits. Plaintiff appears to argue either that the Defendants prevented him from filing his appeal (Def.'s Opp., p. 2 ("Individual sought to exhaust the required appeal Process as mandated by law under [PRLA] the issue is that access was void thus can not accomplish objective")) or that he did file an administrative appeal on the alleged incidents (Exhibit B to Complaint and Exhibit K to Def.'s Opp.). Defendants respond that Exhibit B is not trustworthy because it is not contained in the prison's file and it does not bear any indicia that it was submitted to the prison authorities or that any action was taken in response to it.[2]

■ Section 1997e(a) of the PLRA shifts the burden to the defendants to raise and prove the absence of exhaustion. *Wyatt,* 315 F.3d at 1119. The Court finds that Defendants have satisfied their burden in the instant case. First, the prison's records establish that Plaintiff did not file an appeal relating to the September 2000 incidents at issue in this case. Edwards Decl. at paras. 3–5 and exhibits A–G. In her declaration, Ms. Edwards states that a thorough search of the prison's records revealed that Plaintiff submitted five appeals in 2000 and she summarized the facts involved in each of those appeals.[3] *Id.* at

**2.** Defendants do not address Exhibit K, which was attached to Plaintiff's Opposition. However, because Plaintiff failed to serve his opposition on Defendants and Defendants had to obtain the pleading from other sources, the

record does not establish whether Defendants ever received the attachments.

**3.** In sum, the Declaration sets forth the following information: (a) a staff complaint received on January 24, 2000, duplicated on

paras. 3 and 4. The Court's review of the attached records confirms that they were not filed in or after September 2000. This evidence indicates that Plaintiff failed to file an appeal of the relevant incidents.

Second, the Court finds that the relevant documents submitted by Plaintiff have not been authenticated and are not trustworthy or persuasive. Exhibit B to the Complaint appears to be a formal appeal of the incidents occurring on September 8 and 20 and Exhibit K to Plaintiff's Opposition appears to be a formal appeal of the incident occurring on September 28th. However, neither document appears to be authentic nor reliable and Plaintiff has failed to provide any supporting evidence. Neither document has a log number or other indication that it was received by the prison. *See* Edwards Decl., para. 2 ("[w]hen an appeal is properly and timely submitted at the formal level on a CDC form 602, it is assigned a log number—regardless of its disposition—for tracking purposes and to prevent inmates from asserting staff lost the appeal"). And, there is no indication on either form as to what action, if any, was taken by the prison in response to the complaint. This is in stark contrast to the other administrative appeals submitted by Plaintiff. Pl.'s Opp., Exhs. A–J. The other documents contain file-stamps or notations indicating that the complaint was received by the prison. Many of them also contain log numbers. And, most of the submitted documents contain handwritten, typed or stamped notations about what action was taken by the

prison and the prisoner's response if any. *Id.* The documents submitted by Plaintiff as Exhibit B to the complaint and Exhibit K to his Opposition do not have any of these items; they do not appear to have been presented to the prison authorities. Moreover, Plaintiff has not authenticated the documents in any way. Exhibits B and K do not establish that Plaintiff properly appealed the relevant conduct; rather, they support Defendants' argument that Plaintiff failed to exhaust his administrative appeals.

Third, neither of the documents relied upon by Plaintiff establish that Plaintiff exhausted his three levels of appeal. Both Exhibit B to the Complaint and Exhibit K to Plaintiff's Opposition contain Plaintiff's allegations or complaint but neither contains a staff response. Both documents are on a Form 602 and there is a place for the staff response at the informal level. *See* Complaint, Exhibit B and Pl.'s Opp., Exhibit K. There is nothing written in either of the staff response areas. *Id.* This indicates that Plaintiff did not appeal either complaint to the informal level. Moreover, the formal level review portion of the form contains information about how the inmate should proceed with his formal level review. *Id.* Plaintiff did not complete the formal review section in either form. *Id.* Neither document contains any indication that Plaintiff continued with his appeal through the third and final level of review. To exhaust his administrative appeals, a prisoner is required to continue appealing the conduct and decisions

January 27, 2000, partially granted on May 2, 2000, however, never pursued beyond the first level; (b) a staff complaint received on January 27, 2000, screened out on February 1, 2000 because appeal form was incomplete and never resubmitted by Plaintiff; (c) a medical issue appeal received on January 27, 2000, screened out on January 27, 2000 because it was illegible and never resubmitted by Plaintiff; (d) a staff complaint received on

March 13, 2000, partially granted on April 6, 2000, however, never pursued beyond the first level; (c) a staff complaint received on July 14, 2003, partially granted on September 6, 2000, however, never pursued beyond the first level. Edwards Decl., para. 4. Attached to this Declaration are documents labeled Exhibits B through G, which Ms. Edwards authenticates as computer printouts tracking each of Plaintiff's appeals. *Id.* at paras. 1–5.

through the third or Director's Level of review. *Wyatt,* 315 F.3d at 1116–1117 (California has a three-level procedure that must be followed to exhaust the administrative remedies). The evidence presented to the Court establishes that Plaintiff did not appeal the relevant complaints through all of the required levels of appeal and, as such, did not exhaust his administrative remedies as to the September 2000 conduct.

Because the Ninth Circuit authorizes this Court to "look beyond the pleadings and decide disputed issues of fact," this Court finds that the evidence submitted to the Court establishes that Plaintiff did not exhaust his administrative appeal as to any of the incidents at issue in this case (those occurring on September 8, 20 and 28, 2000). *Wyatt,* 315 F.3d at 1119. First, the Court rejects Plaintiff's argument that Exhibits B and K were submitted to the prison authorities. Second, the Court finds that the declaration and records submitted by Defendants establish that Plaintiff did not appeal the relevant claims. Third, the Court finds that even if Exhibits B and K were submitted to the prison authorities, they do not establish that Plaintiff pursued his appeals through the required three levels of administrative review. Defendants have satisfied their burden by establishing that Plaintiff failed to exhaust his administrative appeals and, as such, the Court recommends that the District Judge grant Defendants' motion to dismiss pursuant to Fed.R.Civ.P. 12(b). Because Plaintiff is required to appeal any adverse action within 15 working days (§ 3084.6(c)) and that time has passed, the Court recommends that the District Judge dismiss Plaintiff's Complaint without leave to amend.

## IV. *REQUEST FOR JUDICIAL NOTICE*

■ Rule 201 provides that a court may take judicial notice of facts "not subject to a reasonable dispute in that it is either (1) generally known within the territorial jurisdiction of the trial court or (2) capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned." Fed.R.Evid. 201(b). The court may consider materials that are a matter of public record in ruling on a motion to dismiss. *Shaw v. Hahn,* 56 F.3d 1128, 1129 n. 1 (9th Cir.1995), *cert. denied,* 516 U.S. 964, 116 S.Ct. 418, 133 L.Ed.2d 336 (1995); *Mack v. South Bay Beer Distributors, Inc.,* 798 F.2d 1279, 1282 (9th Cir.1986). In the instant case, Defendants ask the Court to take judicial notice of two things: (1) the declaration of Denise Edwards and Exhibits A–G thereto and (2) the unpublished decision of *Jerricks v. Schomig,* 65 Fed.Appx. 57, 2003 WL 1586485 (7th Cir.2003). For the reasons set forth below, the Court grants Defendants' first request and denies Defendants' second request.

■ The Court finds that the declaration of Denise Edwards and its attachments are sufficiently authenticated to warrant admission into evidence.[4] In her declaration, which is signed under the penalty of perjury, Ms. Edwards states that she is familiar with inmate appeals process and the processing of inmate appeals. Edwards Decl. at para. 1. Ms. Edwards further states that when an appeal is properly and timely submitted at the formal level on a CDC form 602, it is assigned a log number. *Id.* at para. 2. Ms. Edwards also testified that inmates have 15 working days in which to appeal any action they consider adverse to themselves. *Id.* Ms.

---

4. Although Defendants ask the Court to take judicial notice of the Edwards Declaration, the Court finds that the real concern is the validity and reliability of the submitted Declaration and, therefore, addresses that issue.

Edwards then states that a search was conducted of the prison's business records for any appeals filed by Plaintiff in 2000. *Id.* at paras. 3 and 4. Ms. Edwards identified five appeals filed by Plaintiff, summarized the allegations and resolutions of each, and attached computerized printouts, which she identified as the "Inmate/Parolee Appeal (602) Status Report". *Id.* at para. 4. Finally, Ms. Edwards testifies that she personally compared Plaintiff's Exhibit B with the prison's records and verified that it was not anywhere in the prison records. *Id.* at para. 5. Ms. Edwards concludes that based on her experience and review of the file, Exhibit B was never submitted to the prison and Plaintiff never appealed the September 2000 incidents. *Id.* The Court finds that Ms. Edwards' declaration sufficiently authenticates the attached exhibits and that they are admissible evidence of the absence of records. *See* Fed.R.Evid. 803(7) and 901.

■ Defendants also ask this Court to take judicial notice of a Seventh Circuit unpublished opinion. The Court denies this request. An unpublished Seventh Circuit decision has no bearing on the instant case and the Court declines to consider it. *See* 9th Cir. R. 36–3 (unpublished dispositions and orders may not be cited to or by the courts of this circuit).

## IV. *CONCLUSION*

For the reasons set forth above, this Court recommends that Defendants' Motion to Dismiss for Plaintiffs failure to exhaust his administrative remedies pursuant to Fed.R.Civ.P. 12(b) be **GRANTED**.

This report and recommendation is submitted to United States District Judge Barry Ted Moskowitz pursuant to the provisions of 28 U.S.C. § 636(b)(1)(B). Those provisions afford any party with an opportunity to serve and file written objections to the proposed findings and recommenda-

tions. The Court informs the parties that failure to file timely objections may affect the scope of review conducted by the district court, and in the event of an appeal, by the Ninth Circuit Court of Appeals. *See Baxter v. Sullivan,* 923 F.2d 1391, 1394 (9th Cir.1991). Any party may file and serve written objections to the report and recommendation on or before *November 5, 2004.* The document should be captioned "Objections to Report and Recommendation." Any reply to such objections must be filed by *November 19, 2004.*

**IT IS SO ORDERED.**

Oct. 14, 2004.